THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
CÁNDIDO PACHECO BETANCOURT, Defendant and Appellant.

No. CR-64-370.        Decided September 16, 1965.

*Enrique González, Luis E. Gandía Argüelles,* and *Francisco
Abréu Castillo* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,*
for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The following complaint was filed against appellant Cándido Pacheco Betancourt:

"The above-mentioned defendant, Cándido Pacheco Betancourt, on or about September 18, 1962 and in Trujillo Alto, P.R. . . . illegally, voluntarily, and maliciously, entered the residence of Gloria Andino Sánchez during the night hours with the criminal intent of committing rape on the person of said Gloria Andino Sánchez."

Trial was held and the jury rendered a verdict of guilty of burglary in the first degree. He was sentenced to serve from two (2) to five (5) years in the penitentiary at hard labor.

To support his appeal in the sense that the verdict is contrary to law he assigns the following errors: (1) the evidence presented was contradictory and incredible and, therefore, it should have created a reasonable doubt in the mind of the jury, and (2) it establishes that defendant was in a state of intoxication and, therefore, the jury should have determined his incapacity to conceive the specific intent required for the crime.

In the first place we must examine whether the evidence introduced at the trial is sufficient to support the fact that the illegal entry of defendant in one of the places mentioned in § 408 of the Penal Code[1] has been proved beyond a reasonable doubt, and that it took place with the specific intent to commit any felony. *People* v. *Torres*, 81 P.R.R. 659, 661 (1960); *People* v. *Laboy Díaz*, 90 P.R.R. 182 (1964); *People* v. *Soriano Rodríguez*, *ante*, p. 44.

The evidence for the prosecution consisted of the testimony of prosecutrix Gloria Andino Sánchez and of Cándida Yera Vicenty, a neighbor, and of a medical certificate issued

---

[1] Section 408 of the Penal Code (33 L.P.R.A. § 1591) defines burglary as follows:

"Every person who enters any house, room, apartment, tenement, shop, warehouse, store, barn, stable, outhouse, or other building, tent, vessel or car, with intent to commit grand or petit larceny, *or any felony*, is guilty of burglary." (Italics ours.)

on September 20, 1962 by Dr. Grovas, which states the following:

"That I certify that Gloria Andino Sánchez was admitted in the District Hospital of Bayamón, referred by the Public Health Center of Trujillo Alto; that the patient presents abrasion on the right deltoid region and in the middle third, in the lower third and right arm; that no vaginal examination was made since the patient was not a virgin and she did have two children."

Witness Gloria Andino Sánchez testified, in synthesis, that on September 18, 1962, about 11:00 p.m. while she was at her house with her two children she heard a noise at her door; that the door was fastened with a door bolt which has a chain; that she heard somebody knocking at the door and calling her saying: "Gloria, Gloria, open the door"; that then the door was "shaken vigorously" and it flew open; that when the door flew open defendant entered the house and seized her by her arms; that they struggled for a while until defendant threw her to the floor; that while they struggled defendant was saying: "Look, Gloria, Gloria, I am going to rape you; I am going to rape you if you do not 'surrender' and then I am going to the girl"; that after he threw her to the floor defendant continued struggling with her until he raped her; that that happened about 11:00 o'clock and about half an hour later he was still on her; that defendant did not stand up, "he was that dead-drunk"; that she cannot speak clearly because defendant had hurt her throat; that she called for help saying "Mercy, mercy; Cándido Pacheco is here. Help, help"; that finally she was able to escape and walk towards the door, but then defendant seized her again to abuse her; that she walked outside and fell down on some stones; that she continued going down slowly and called Pablo Pacheco, defendant's uncle, and told him, "look, Cándido is there, get him out of the house because he raped me. You go and get him out; you are his uncle and aunt"; that the uncle

and aunt said that it was not he and she continued screaming: "Help, help, doña Candita, come here, Cándido Pacheco raped me"; that then doña Candita came and they took the girl away; she said also that on October 18, 1962 defendant went to her house to bribe her with $30, "so she would not testify against him in this same case" and she threw a pot at him.

Cándida Yera Vicenty testified, insofar as pertinent, that on the night of the events she was sleeping at her house when she heard Gloria Andino screaming desperately "asking somebody to take Cándido Pacheco out of her house because he had raped her" and that he wanted to rape the girl; that then she turned on the light and heard Gloria Andino saying: "Run, run, he is going to take the girl, he is going to take the girl." She also testified that the next day she talked to Gloria Andino and she noticed that her voice was hoarse.

The defense presented the testimony of policeman Ángel Manuel Rivera who testified, insofar as pertinent, that he participated in the investigation of the complaint which gave rise to this prosecution; that the day after the events he could observe the door of the prosecutrix's house and that it was in good condition. Mrs. Hilda Mercedes Ruiz, who at that time lived with defendant, testified that on the night of the events defendant was at his house lying down and watching television; that he did not go out that night. Defendant Cándido Pacheco Betancourt said that he has never been at Gloria Andino's house, that on the night of September 18, 1962 he was at home and that he was not in a state of intoxication.

■ The evidence before the jury was sufficient to render a verdict of guilty. "The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact . . . ." Law of Evidence, § 18 (32 L.P.R.A. § 1661); *People* v. *Cortés*, 86 P.R.R. 208 (1962). Although some contradictions were noticed in the testimony of the prosecutrix, they were not in relation to fundamental matters but rather

in relation to events subsequent to the criminal facts such as to whether the neighbor came to the prosecutrix's house on the same night or the next day, or whether the door of the house was fixed before or after the investigation by the policeman, which although they could affect the credibility the witness deserved, Law of Evidence § 162 (32 L.P.R.A. § 1679), they do not compel the jury to reject the rest of the testimony. Since the jury has the power under the law to judge the credibility of the witnesses as well as to settle any other conflict in the evidence, this Court shall not disturb its findings unless it is shown that it abused such power. *People* v. *Aletriz*, 85 P.R.R. 621 (1962); *People* v. *Barreto*, 85 P.R.R. 723 (1962).

■ The second error was not committed. The evidence on intoxication appeared from the prosecutrix's testimony. Defendant did not present evidence in this sense. His defense consisted in an alibi. Since from the evidence for the prosecution it appeared that defendant was in a state of intoxication, in giving instructions to the jury the judge stated that "if you understand from the evidence that on the night of the occurrence of these facts, as alleged in the information, the defendant was actually voluntarily intoxicated and that he was in a state of voluntary intoxication and that in this condition of voluntary intoxication he entered Gloria Andino Sánchez' house, but if you were of the opinion that by reason of said intoxication, that the same was of such a degree that it precluded him from conceiving the specific intent of raping, of entering with the specific intent of raping Gloria Andino Sánchez; or if you had a reasonable and well founded doubt on this matter . . . you are constrained to deliver to the Court a verdict of acquittal."

Although voluntary intoxication may be an element from which the absence of specific intent may be inferred (Penal

Code, § 41, 33 L.P.R.A. § 87),[2] essential element for the offense of burglary, the finding of this fact devolves on the jury. *People* v. *Rosado*, 78 P.R.R. 416 (1955).

The judgment appealed from will be affirmed.

---

[2] Said section provides thus:

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But, whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."